VAIDIK, Judge,
dissenting.
I respectfully dissent from the majority’s decision to vacate former Muncie Central High School principal Christopher Smith’s conviction for failing to report child abuse. I would find that Smith had reason to believe that sixteen-year-old G.G. was a victim of child abuse and failed to immediately report the abuse.
On November 9, 2010, sixteen-year-old G.G. told a Muncie Central employee, Ka-thaleena McCord, that another student at the school, sixteen-year-old S.M., had raped her in the boys’ bathroom during lunch that day. G.G. told McCord this around 12:20 p.m. or 12:25 p.m. An informal, four-hour investigation of G.G.’s allegation then began, conducted by a number of school employees — McCord, former as *364 sociate principal Jackie Samuels, and school nurse Trudy Anderson — all spearheaded by Smith. Witnesses would later testify that Smith and the other Muncie Central employees had investigated G.G.’s allegations because she had faked a seizure in the past and therefore believed she might be lying about the rape and because they wanted to protect S.M.’s reputation.
Smith began the investigation by requiring G.G. to give him a written statement of her allegations. After she did so, Smith read her statement and asked G.G. questions. Smith interviewed S.M. and told the school’s athletic director to search S.M. and G.G.’s lockers. Smith also instructed McCord to look for any video footage of S.M. and G.G. in the school hallways that day. In addition, Smith sought advice on how to proceed from numerous school officials. All the while, G.G. remained in McCord’s office; S.M. was allowed to go home. G.G. was eventually taken to the local hospital for a sexual-assault examination, which confirmed her allegations. S.M. later admitted that he raped G.G. and pled guilty to sexual battery and criminal confinement.
Because G.G. had been adjudicated a CHINS and removed from her home years earlier, the Department of Child Services (“DCS”) had placed G.G. in a residential program at the Youth Opportunity Center (“YOC”) in Delaware County. G.G. was still living at the YOC in November 2010. Shortly after G.G. reported the rape, Smith told Samuels to call the YOC. Samu-els did so at approximately 12:40 or 12:45 p.m. Although Samuels made this initial call to the YOC, no one from Muncie Central contacted DCS or any other authority to report G.G.’s allegations until 4:34 p.m., when Assistant Superintendent Tim Heller verbally instructed Smith to call the child-abuse reporting hotline.
On appeal, Smith contends that he had no reason to believe that G.G. was a victim of child abuse such that he was required to make a report. Smith also argues that, nonetheless, he did immediately report the abuse by virtue of Samuels’ 12:40 or 12:45 p.m. call to the YOC. The majority accepts Smith’s arguments. I believe that doing so disregards the evidence most favorable to the judgment and undermines Indiana’s child-abuse reporting statute. Further, the majority cites with approval case law from other jurisdictions that permits verification of a child’s allegations of abuse before making a report. I believe such a verification process is contrary to statute and, if permitted, may have the highly undesirable result of suppressing or deterring reports of abuse.
Indiana Code section 31-33-5-1 requires “an individual who has reason to believe that a child is a victim of child abuse or neglect to make a report as required by this article.”[15] The reporting statute provides that “reason to believe ... means evidence that, if presented to individuals of similar background and training, would cause the individuals to believe that a child was abused or neglected.” Ind.Code § 31-9-2-101. If a person has reason to believe that abuse or neglect has occurred, they “shall immediately make an oral report to [ ] the department; or [ ] the local law enforcement agency.” Ind.Code § 31-33-5-4. A person who fails to immediately report child abuse commits a Class B misdemeanor. Ind.Code § 31-33-22-l(a).
Smith argues that he did not have reason to believe that G.G. was a victim of child abuse. His primary argument in *365 support of this claim is that he consulted many school officials about G.G.’s allegations, none of whom believed that G.G.’s allegations constituted child abuse because two children were involved. The majority seems to accept this argument, noting school employees’ testimony to this effect and the fact that Muncie Central’s guidelines and policies did not define child abuse, though “a pamphlet” referred to “sexual abuse” as “any sexual act between an adult and a child.” Op. at 862-68. But this ignores the common-sense conclusion that when a child is the victim of abuse— regardless of the age of the perpetrator— the act is abuse of a child. Moreover, one expressly stated goal of the reporting statute is the protection of children. See Ind. Code § 31-33-1-1(3) (“The purpose of this article is to [] provide protection for an abused or a neglected child from further abuse or neglect_”). A child is no less in need of protection from further abuse simply because his or her abuser is also a child. The evidence most favorable to the judgment shows that a child, G.G., alleged that she had been raped. I would find that Smith had reason to believe G.G. was a victim of child abuse.
I would also find that Smith failed to immediately report the abuse. Smith claims that he directed Samuels to contact the YOC at approximately 12:40 or 12:45 p.m., and this constitutes an immediate report to DCS. I disagree. G.G. was a ward of DCS living at the YOC. Smith, Samuels, and other witnesses testified that the YOC was contacted because it was, in essence, G.G.’s parent or guardian and had to give permission for G.G. to receive medical care. Notifying a parent or guardian of abuse allegations, even for the purpose of obtaining permission to seek medical treatment for a victim, does not amount to reporting allegations of abuse to authorities. And to the extent Smith argues that the YOC was DCS’s agent for reporting purposes, I would also disagree. The record does not establish that the YOC assumed DCS’s statutorily mandated duty to receive and investigate reports of abuse or that the YOC indicated as much to Smith or Samuels. Because Samuels’ call to the YOC did not constitute a report, the relevant report did not occur until 4:34 in the afternoon, when Smith called the child-abuse reporting hotline. I do not believe this report, made nearly four hours after G.G. said she had been raped, can be called immediate.
Although this Court has yet to define the term “immediate” in the child-abuse reporting context, I would consider the following factors in determining whether a report was made immediately: (1) the identity of the person to whom the victim reports abuse; (2) the impact any delay in reporting the abuse to the authorities might have on evidence of the alleged crime; (3) the length of time between the victim’s report and the report to authorities; and (4) the circumstances of any delay in reporting. Here, G.G. reported the incident to her high-school principal, Smith, shortly after she was raped at the high school. Instead of reporting this incident immediately to law-enforcement authorities or DCS, Smith took it upon himself to investigate G.G.’s report. Critical evidence could have been lost during this time frame as the location of the rape, a boys’ bathroom, was not secured, G.G.’s attacker was allowed to go home, and G.G.’s sexual-assault examination at a local hospital was potentially delayed. The fact that S.M. ultimately admitted that he attacked G.G. does not change the fact that important evidence could have been lost during this time period. Despite the relatively short time frame, four hours, between G.G.’s report to Smith and Smith’s eventual report to DCS, the circumstances viewed in a light most favorable to the *366 judgment support the conclusion that Smith failed to immediately report G.G.’s abuse to the proper authorities.
Because what occurs — or does not occur — immediately after an allegation of abuse is so critical, I respectfully disagree with the majority’s approval of ease law from another jurisdiction that permits the verification of abuse before reporting that abuse to authorities. See Op. at 363. Allowing such a verification process undermines the purpose of the statute, which is to encourage, rather than discourage the reporting of suspected abuse and, in turn, ensure an impartial investigation. Ind. Code §§ 31-33-1-1(1), 31-33-1-1(2).
This case exemplifies the dangers of sanctioning a verification process. Here, school officials thought G.G. might be lying about the attack and wanted to protect the reputation of her attacker. Undoubtedly school officials also had an interest in protecting Muncie Central’s reputation as a safe environment, not an environment where rape occurs during school hours. The internal investigation was hardly in the hands of unbiased and impartial investigators.
By requiring that reports of abuse be made to DCS or the proper authorities, the reporting statute aims to prevent a situation in which individuals familiar with an alleged victim or abuser, or otherwise invested in the situation, conduct an informal investigation shaped by bias or improper motives. The consequences of a tainted investigation are high — evidence may be lost with the passage of time, allegations may be suppressed, and victims may be reluctant to report abuse. For all of the above reasons, I respectfully dissent and would affirm the judgment.

. Although this Chapter does not define "child,” Chapter 24 and 25 of this Article define "child” as "an individual less than eighteen (18) years of age.” Ind.Code §§ 31-33-24-1, 31-33-25-1.